# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:12-cr-00102-TWP-DML-48 |
| FRANK JORDAN (48), | ) |
| Defendant. | ) |

## ENTRY ON MOTION FOR NEW TRIAL

Defendant Frank Jordan ("Jordan") was convicted by jury of Conspiracy to Distribute 500 grams or More of Cocaine and Unlawful Use of a Communication Facility in Connection with a Drug Offense on November 6, 2013. The Court denied his Motion for Judgment of Acquittal (Dkt. 2615), and now addresses Jordan's Motion for New Trial (Dkt. 2683). The Court held an evidentiary hearing on the Motion on May 9, 2014, and for the following reasons the Motion is **DENIED**.

## I. BACKGROUND

Jordan is Defendant No. 48 in a multi-count RICO case involving 50 other defendants, of which many were members of the Outlaws Motorcycle Club. Jordan was not alleged to be an Outlaw, but instead was implicated in a conspiracy for selling narcotics to members of the Outlaws Motorcycle Club. Specifically, Jordan was charged in a Second Superseding Indictment with Count 16, Conspiracy to Distribute Cocaine and Count 41, Unlawful Use of Communication Facility in Connection with a Drug Offense. Jordan's case was severed from his co-defendants and on November 4, 2013 he proceeded to trial alone. At trial, the Government presented evidence that drug deals were routinely conducted in the restrooms and parking lot of

Sidewinders Bar ("Sidewinders") in Indianapolis, Indiana. Hector Nava-Arrendondo ("Nava"), a cooperating witness, testified that he received cocaine from Jose Diaz during the fall of 2010 until his arrest in April 2012. Nava identified Abraham Flores and James Stonebraker ("Stonebraker") as his cocaine customers. Stonebraker, a co-defendant under the Second Superseding Indictment, also testified at Jordan's trial as a cooperating witness for the Government. During cross-examination, the following colloquy took place:

> Q. Now, Mr. Stonebraker, you talked about how you were using drugs from 2009 up until the point you were arrested in 2012, is that right?
>
> A. Yes.
>
> Q. Okay. And you told us how often you were using cocaine right?
>
> A. Yes.
>
> Q. Every day?
>
> A. Every day.
>
> Q. Taking a gram or two each day?
>
> A. Half a gram to a gram.
>
> Q. Okay. And then you were also smoking marijuana?
>
> A. Yes.
>
> Q. All right. You were high when you went to Sidewinders, right?
>
> A. Probably not most of the time. I went after work most of the time. There was times when I was high when I was there, yes.
>
> Q. All right. Are you under any medication?
>
> A. No.

Dkt. 2610 at 79-80. After Stonebraker had been excused as a witness, the Court received a written question from the jury regarding Stonebraker's drug use. The juror's question was, "Is the witness currently clean and sober? For how long? Is he currently in a drug treatment program?" Def. Ex. 1003. Rather than recall Stonebraker as a witness, the parties agreed to contact his probation officer and read a stipulated response to the juror's question into evidence. During a recess, Assistant United States Attorney Pryor ("AUSA Pryor") spoke with United States Probation Officer Chris Dougherty ("USP Officer Dougherty"). Thereafter, the parties agreed upon the following stipulation marked as Exhibit 83, which was read to the jury:

> James Stonebraker was arrested on July 11, 2012. On that date, James Stonebraker tested positive for cocaine. Since that date, he has had 10 to 15 drug screens administered by the United States Probation Office, which have been negative. Currently, Mr. Stonebraker is participating in a . . . drug treatment program. In addition, on November 4, 2013, Mr. Stonebraker tested negative for drug use.

Dkt. 2610 at 162.

On February 28, 2014, in connection with Stonebraker's sentencing, his attorney filed a letter in CM/ECF from a social worker. The letter stated that since August 2012 when he began treatment, Stonebraker had attended relapse prevention groups, education groups, communication groups and one-on-one counseling at least once per month. The letter went on to state: "James has also been reducing his dose periodically. For a client to successfully detox from methadone, he should go slowly. Detoxing out of treatment will be entirely James' decision as he is in very good standing and provides licit urine screens". Dkt. 2674-2. Jordan thus asserts that Stonebraker lied about his use of medication at Jordan's trial. Subsequently, Jordan filed a motion for new trial based upon an alleged *Napue v. Illinois*, 360 U.S. 264 (1959) violation. Jordan also requested an evidentiary hearing to determine what AUSA Pryor and USP

Officer Dougherty discussed in order to determine if the Government knew or should have known that Stonebraker gave false testimony. The Court held the hearing on May 9, 2014.

## II. LEGAL STANDARD

"When the government obtains a conviction through the knowing use of false testimony, it violates a defendant's due process rights." *United States v. Freeman*, 650 F.3d 673, 678 (7th Cir. 2011) (citing *Napue*, 360 U.S. at 269). To establish the right to a new trial, a defendant must establish: "(1) that there was false testimony; (2) that the government knew or should have known it was false; and (3) that there is a likelihood that the false testimony affected the judgment of the jury." *Id.*

## III. DISCUSSION

The Court finds that Jordan has failed to establish a violation of his due process rights such that a new trial is warranted. First, it is questionable whether false testimony was given at Jordan's trial. Specifically, during cross-examination of Stonebraker, Jordan's counsel asked, "Are you under any medication," and Stonebraker replied, "No." In context, the question could be interpreted as asking whether Stonebraker was under the influence of any medication that could affect his ability to testify—the questions asked immediately previous were about Stonebraker's drug use and whether he had been high at Sidewinders. Further, even if Stonebraker was taking methadone at the time he testified, he was not necessarily "under" the influence of a medication as that phrase is generally interpreted. However, because the question, "Are you under any medication," did not differentiate between whether Stonebraker was under the influence of medication or was simply taking any medication, the Court will assume for analysis that Stonebraker gave a false answer and move on to the next prong.

4

Under the second prong, Jordan has not shown that the Government knew or should have known that Stonebraker was taking methadone and gave false testimony when he answered, "No." The Government asserts that it had no knowledge of Stonebraker's methadone treatment. At the evidentiary hearing USP Officer Dougherty testified that methadone treatment was not a condition of Stonebraker's pretrial release but she became aware on August 29, 2012, that Stonebraker voluntarily entered a methadone drug treatment program. She further testified that when she and AUSA Pryor spoke by telephone on November 5, 2013, she did not tell AUSA Pryor that Stonebraker was in a methadone drug treatment program. USP Officer Dougherty also testified that she was not asked whether Stonebraker was participating in a drug treatment program, but only whether he had "tested positive for any drugs? And was he in compliance with his pretrial release?" Dkt. 2820 at 10. It is clear to the Court that the Government did not know that Stonebraker was taking methadone, and thus did not know that he was under any medication when he answered, "No."

The *Napue* standard also applies in situations when the Government "should have known" of false testimony, but the Court finds that Jordan fails under this standard, as well. At the hearing, Jordan argued that information known to pretrial services, in this specific case USP Officer Dougherty, can be imputed to the Government. He cited *United States v. Combs*, 267 F.3d 1167 (10th Cir. 2007), in which the Tenth Circuit discussed in the context of *Brady* whether knowledge of pretrial services could be imputed to the prosecution. The court did not give a definite answer under the facts of that case, which involved a witness's violations of pretrial release—which pretrial services are bound to report under 18 U.S.C. § 1354(5). Jordan also referenced *Kyles v. Whitley*, 514 U.S. 419, 438 (1995), which discussed a prosecutor's responsibility for disclosing favorable information unknown to the prosecutor under *Brady*. The

5

Court finds these cases inapplicable to the precise issue here. First, Stonebraker had not committed any violations of his pretrial release that would have required pretrial services or USP Officer Dougherty to report to the Government. Second, pretrial services is an arm of the judiciary, not the prosecution. Thus, there is no reason to impute the knowledge of pretrial services to the Government in this case.

Given that pretrial services is an arm of the judiciary, Jordan also suggested at the hearing that the Court may have had an obligation to correct Stonebraker's false testimony. He cited *United States v. Pena*, 227 F.3d 23 (2d Cir. 2000), in which the defendant requested access to exculpatory information found in the confidential pretrial services report. The district judge reviewed the report *in camera* and denied the request. Prior to Jordan's trial, he requested, and the Court denied, access to Stonebraker's pretrial services report. Specifically, Jordan sought the confidential Pretrial Services Reports of his co-defendants to use for possible impeachment purposes by showing prior convictions, cooperation agreements with the Government, physical and mental health status, substance abuse histories and citizenship information. Dkt. 2327 at 2. The Court denied the motion, finding "the material Mr. Jordan seeks from the Pretrial Services Report is otherwise available" and none of the "information in the Pretrial Services Report meets any other criteria for release of this confidential information." Dkt. 2332 at 2. Upon additional review, the Court stands behind its pretrial ruling and determination that there was not good cause for the disclosure of Stonebraker's pretrial services report[1]. The Court was not under an obligation to correct Stonebraker's testimony at trial. Additionally, Stonebraker's Pretrial

---

[1] This Court's *in camera* review of Stonebraker's Pretrial Services Report revealed that Stonebraker declined an interview with pretrial services, that his mental health status was unknown, and a urine sample collected on July 11, 2012 tested positive for cocaine and marijuana. A woman identified as Stonebreakers girlfriend reported he had an addiction to pills and that Stonbreaker underwent withdrawal symptoms while in the jail but is now clean.

6

Services Report filed on July 23, 2012, was prior to his voluntary enrollment in a methadone program.

Third, Jordan has not established prejudice that requires a new trial. He has not made a meaningful challenge that Stonebraker's use of methadone affected his ability to perceive, recall or report factual events, to testify truthfully, or that such information would have impacted the jury. The jury was told that Stonebraker was in a drug treatment program, and although the specific use of methadone was not known by the parties or disclosed to the jury, the Court finds that this additional piece of information likely would not have changed the verdict. Therefore, Jordan has failed to satisfy the third element of *Napue*.

## IV. **CONCLUSION**

Accordingly, Jordan's Motion for New Trial (Dkt. 2683) is **DENIED**.

**SO ORDERED.**

Date: 05/15/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Gregory P. Bowes
GREG BOWES LEGAL SERVICES, P.C.
greg@gregbowes.com

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE
bradley.blackington@usdoj.gov

Doris Pryor
UNITED STATES ATTORNEY'S OFFICE
doris.pryor@usdoj.gov

Josh J. Minkler
UNITED STATES ATTORNEY'S OFFICE
Josh.minkler@usdoj.gov

7